UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALLSTATE INSURANCE COMPANY     :
                               :
                               :
v.                             :     CIV. NO. 3:13CV585 (HBF)
                               :
SAPNA TANDON, ET AL            :
                               :

RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT [Doc. ##40, 41]

Plaintiff Allstate Insurance Company ("Allstate") brings this action seeking a declaration that it owes no duty to defend or indemnify defendants Sapna Tandon and Robert Doohan (sometimes collectively referred to as "defendants") in a civil suit filed in Connecticut Superior Court by Frank and Donna Genna. Pending is Allstate's motion for summary judgment [Doc. #40], and defendants' cross motion for summary judgment [Doc. #41], both of which implicate Allstate's duty to defend and/or indemnify defendants in the underlying state court action. For the reasons that follow, Allstate's motion for summary judgment [Doc. #40] is **GRANTED** and defendants' motion for summary judgment [Doc. #41] is **DENIED**.

I.   **FACTS**[1]

Allstate insured defendants under an Allstate Deluxe Homeowners Policy # 9 19 605550 10/03 covering the one year period beginning October 3, 2009 and ending October 3, 2010 ("homeowners policy"). Allstate also insured defendants under an Allstate Personal Umbrella Policy # 9 19 264840 11/06 covering

---

[1] The following undisputed facts are taken from the parties' local rule 56(a) statements and attached exhibits. See Doc. ##40-1, 43-1, 41-2, 44-7.

the one year period beginning November 6, 2009 to November 6, 2010 ("umbrella policy"; the homeowners policy and umbrella policy are hereinafter sometimes collectively referred to as the "policies").[2]

During this covered period, on May 28, 2010, an incident allegedly occurred at Captain's Cove Marina of Bridgeport, Inc. ("Captain's Cove"), which resulted in Frank Genna sustaining personal injuries. In June 2011, Frank and Donna Genna (collectively the "Gennas") filed a civil action against Captain's Cove, its permittee and "backers" (collectively the "Captain's Cove defendants"). In October 2011, the Captain's Cove defendants filed a third-party action against Tandon, Doohan and several other individuals. Thereafter, the Gennas filed a complaint in state superior court, which asserted direct causes of action against Tandon, Doohan and the other individuals identified in the third party complaint. The Gennas are now proceeding under a third revised complaint dated September 30, 2013 (the "Genna complaint"). Allstate is currently providing a legal defense to Tandon and Doohan in the state court matter under a full reservation of rights and defenses under the policies.

The Genna complaint asserts fifty five causes of action against fourteen defendants, including negligent supervision, violation of the dram shop act, reckless service of alcohol,

---

[2] Defendant Tandon is the named insured under the homeowners and umbrella policies. Defendant Doohan qualifies as an insured under the policies because he is a resident of the same household and Tandon's husband.

eleven negligence claims, several recklessness claims, civil assault and battery, civil conspiracy, and numerous loss of consortium claims. Counts nine, nineteen, thirty seven and forty seven assert causes of action against defendant Tandon. Counts eight, eighteen, twenty eight, thirty five and thirty six and forty six assert causes of action against defendant Doohan.

The eighth count is captioned "COUNT EIGHT – (*Negligence as to Robert Doohan*)" and alleges:

    1.   At all times mentioned herein, the Plaintiff, FRANK GENNA, was a resident of the Town of King's Point, County of Nassau and State of New York.
    2.   At all times mentioned herein, CAPTAIN'S COVE MARINA OF BRIDGEPORT, INC. (hereinafter referred to as "Captain's Cove Marina"), was a corporation organized under the laws of the State of Connecticut with an address of 1 Bostwick Avenue, Bridgeport, Connecticut.
    3.   At all times mentioned herein, THE RESTAURANT AT CAPTAIN'S COVE, INC. (hereinafter referred to as "RESTAURANT AT CAPTAIN'S COVE"), was a corporation organized under the laws of the State of Connecticut with an address of 1 Bostwick Avenue, Bridgeport, Connecticut.
    4.   On or about May 28, 2010 at and before approximately 6:00 p.m., ROBERT "BOBBY" DOOHAN, SAPNA TANDON, JOSE GUZMAN, RYAN ULBRICK, BRANDON MCNEAL, ZIBA GUY, MICHAEL HERMANN, STACY ROMANO, ROBERT BARBIERI and MICHAEL SPREGUE, were present in the establishments known as the CAPTAIN'S COVE MARINA and RESTAURANT AT CAPTAIN'S COVE.
    5.   At all times mentioned herein [ROBERT DOOHAN] resided at 4900 Main Street in Stratford, Connecticut.
    6.   On or about May 28, 2010, ROBERT DOOHAN, as aforesaid, had arrived at CAPTAIN'S COVE aboard the motor powered sea-going vessel "UP & OVER" that bears Hull ID Number RI 33333 RD.
    7.   Upon information and belief, ROBERT DOOHAN was the registered owner of the motor powered sea-going vessel "UP & OVER" and he was the pilot of the boat at all times pertinent hereto.[3]
    8.   On or about May 28, 2010 at approximately 5:15 p.m., the plaintiff, FRANK GENNA and two companions [] traveled across Long Island Sound on a boat owned by Frank Genna, to the waters of Cedar Creek intending to visit the CAPTAIN'S COVE MARINA and RESTAURANT AT CAPTAIN'S COVE.
    9.   Upon arriving at their destination at approximately

_____
[3] Defendant Doohan is the owner of the boat called "Up & Over," which has inboard or inboard-outboard motor power of more than 50 horsepower.

6:00 p.m., Peter Genna contacted CAPTAIN'S COVE MARINA and/or RESTAURANT AT CAPTAIN'S COVE via short wave radio and he was told to dock his boat at the South Dock and that a water taxi would take him and his companions from the South Dock to CAPTAIN'S COVE MARINA AND RESTAURANT AT CAPTAIN'S COVE.

10.   A short time later, plaintiff, FRANK GENNA, and his two companions were taken to CAPTAIN'S COVE MARINA and RESTAURANT AT CAPTAIN'S COVE via water taxi.

11.   [] FRANK GENNA and his two companions remained at CAPTAIN'S COVE MARINA and RESTAURANT AT CAPTAIN'[S] COVE for approximately 45 minutes and made ready to take the water taxi back to their boat at approximately 6:45 p.m.

12.   While at the dock, waiting for the water taxi, FRANK GENNA and his two companions interacted with ROBERT DOOHAN.

13.   At some point, one of the passengers of the boat UP & OVER fell into the water and [] FRANK GENNA and his two companions, witnessing this, laughed amongst themselves over the mishap.

14.   ROBERT DOOHAN, irritated at this reaction, proceeded to argue, berate and insult FRANK GENNA and his two companions, hurling epithets and other harsh words at them.

15.   [] FRANK GENNA and his two companions thought it best to leave the situation, which they did by boarding the water taxi for a ride to their boat.

16.   The interaction with ROBERT DOOHAN continued, as the boat UP & OVER, followed the water taxi in hot pursuit and, among other things, ROBERT DOOHAN threw a beer bottle over the water taxi and yelled and screamed at FRANK GENNA and his two companions while they rode the water taxi back to the South Dock.

17.   After repeated attempts, UP & OVER was eventually docked at the South Dock and ROBERT DOOHAN proceeded to direct some or all of the passengers to disembark from the boat and assault FRANK GENNA on the South Dock and in the waters surrounding the South Dock.

18.   [FRANK GENNA] was assaulted, strangled, held under water to the point of asphyxia and beaten at the direction of ROBERT DOOHAN.

19.   At all times pertinent hereto, ROBERT DOOHAN had a legal duty to exercise reasonable care in connection with the Plaintiff, FRANK GENNA.

20.   The injuries and other losses sustained by the Plaintiff were caused by the negligence and carelessness of ROBERT DOOHAN in breach of the aforesaid duty.

21.   As a further consequence of the negligence of ROBERT DOOHAN, as aforesaid, and the injuries he sustained [FRANK GENNA] suffered and continues to suffer from permanent brain damage. Because of the serious nature of his injuries, he was taken to St. Vincent's Medical Center by ambulance, and then transferred via helicopter to Westchester Medical Center in Valhalla, New York, for approximately 24 days. He has incurred expenses for medical care and attention, physicians' care, hospital care, medical apparatus, and pharmaceuticals, and it is likely that he will incur further expenses in the future.

22.   As a result of the negligence and carelessness of ROBERT DOOHAN, as aforesaid, the Plaintiff, FRANK GENNA,

suffered great bodily injury consisting of, among other
things, severe and painful injury, emotional upset and mental
anguish, bruises and contusions about his body, and a severe
shock to his whole body and nervous system. He suffered severe
injuries including but not limited to cardiac arrest,
respiratory failure, hypoxic encephalopathy resulting in
permanent brain damage and multi-organ failure.
   23.  As a further consequence of the negligence of ROBERT
DOOHAN, as aforesaid, and the injuries sustained by him, the
Plaintiff, FRANK GENNA, has been required to restrict his
activities. He will never go about again as a well persons,
and some or all of his injuries, or the effects thereof, are
or are likely to be permanent in nature.
   24.  As a further consequence of the negligence of ROBERT
DOOHAN, as aforesaid, the Plaintiff, FRANK GENNA, who was
fifty years old and gainfully employed at the time, lost time
from said employment; was unable and has been unable to carry
on any of the usual duties of said employment; and his earning
capacity has been permanently impaired.
   25.  ROBERT DOOHAN, negligently failed to exercise
reasonable care in his conduct, and as a result the Plaintiff,
FRANK GENNA, sustained an injury to his person as a
consequence of such negligence.

[Genna complaint, Doc. #40-5, 25-29 (brackets added; emphasis in original)]. The ninth count is captioned: "COUNT NINE – (*Negligence as to SAPNA TANDON*) and contains language that is substantively identical to that in the eighth count, except that defendant Tandon is named in paragraphs 12 through 25. [Id. at 29-33].

     The eighteenth count is captioned: "COUNT EIGHTEEN – (*Recklessness as to ROBERT DOOHAN*)," and realleges paragraphs 1 through 18 of count 8. This count is substantively similar to count eight, except that allegations of recklessness comprise the remaining paragraphs of count eighteen. For example, paragraph 19 of the eighteenth counts states that, "The injuries and other losses sustained by the Plaintiff were caused by ROBERT DOOHAN's disregard of the consequences of his actions and the disregard for the rights of the Plaintiff, FRANK GENNA." The

remainder of the count generally substitutes the term

"recklessness" for negligence in paragraphs 20 through 24, and

further alleges that,

> 25. ROBERT DOOHAN, recklessly failed to exercise
> reasonable care in his conduct, and as a result the
> Plaintiff, FRANK GENNA, sustained an injury to his person as
> a consequence of such reckless conduct.
> 26. ROBERT DOOHAN's conduct, as aforesaid, was designed to
> injure the Plaintiff with no just cause or excuse.
> 27. As a result of ROBERT DOOHAN's intentional, wanton,
> reckless and outrageous conduct as aforesaid, the Plaintiff
> has suffered and continues to suffer damages.

[Genna complaint, Doc. #40-5, 61-62]. The nineteenth count is

captioned: "COUNT NINETEEN – (*Recklessness as to SAPNA TANDON*),"

and contains language that is substantively identical to that in

the eighteenth count, except that defendant Tandon is named in

paragraphs 19 through 27. [Id. at 62-64].

The twenty-eighth count of the Genna complaint is

captioned: "COUNT TWENTY EIGHT – (*Civil Assault and Battery as

to ROBERT DOOHAN*)," and realleges paragraphs 1 through 18 of

count 8. [Id. at 78-81]. This count further alleges that, "The

injuries and other losses sustained by the Plaintiff were caused

by ROBERT DOOHAN'S intentional assault and battery of the

Plaintiff, FRANK GENNA." [Id. at 78]. Paragraphs 25 and 26 of

this count further allege, respectively, that, "ROBERT DOOHAN'S

actions in confronting the Plaintiff, Frank Genna, and in

threatening the Plaintiff with physical contact and/or force

were intentional and highly unreasonable and constitute an

assault against Frank Genna," and "ROBERT DOOHAN'S actions in

confronting the Plaintiff, Frank Genna, resulting in unwelcome

physical contact and/or force were intentional and highly unreasonable and constitute a battery against Frank Genna." [Id. at 80].

The thirty-fifth count of the Genna complaint is captioned: "COUNT THIRTY FIVE – (*Civil Conspiracy as to ROBERT DOOHAN, JOSE GUZMAN, RYAN ULBRICK, BRANDON McNEAL, MICHAEL HERMANN, ROBERT BARBIERI and MICHAEL SPRAGUE* (sic))," and realleges paragraphs 1 through 30 of count twenty eight (assault and battery claim). [Genna complaint, Doc. #40-5, 96]. Count thirty five further alleges that,

> 217. ROBERT DOOHAN [and other named defendants], through unlawful means, conspired to commit the foregoing tortious acts [assault and battery].
> 218. ROBERT DOOHAN [and other named defendants], by and among other things threatening the Plaintiff with physical harm and otherwise unlawfully committing such assault and battery, as aforesaid, acted in furtherance of the object of said conspiracy, that is, to injure the Plaintiff without just cause or excuse.
> 219. ROBERT DOOHAN [and other named defendants], by and among other things, acted in concert to flee the scene of the incident, mislead the Bridgeport Police Department as they sought to investigate the incident and otherwise failed to truthfully answer the inquiries of the Bridgeport Police Department following the incidents here at issue.
> 220. In particular, the Defendant, Robert Doohan, instructed and directed his co-conspirators to conceal the true facts and circumstances of the incidents described above from the Bridgeport Police Department in the course of their investigation so as to avoid civil and criminal liability as the result of the events of May 28, 2010, as they are described above.

[Id. at 97].

Counts thirty six and thirty seven of the Genna complaint assert loss of consortium claims and allege that the negligent conduct of Doohan and Sapna, respectively, deprived Donna Genna of the companionship, services and society of her husband to her damage. [Id. at 99]. Similarly, counts forty six and forty seven

of the Genna complaint assert loss of consortium claims and allege that the intentional and/or reckless conduct of Doohan and Sapna, respectively, deprived Donna Genna of the companionship, services and society of her husband to her damage. [<u>Id.</u> at 103].

Defendants' homeowners policy states, in pertinent part, that, "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies[…]" [Pl.'s Loc. R. 56(a)(1) Statement, Doc. #40-1, at ¶46; Def.'s Loc. R. 56(a)(1) Statement, Doc. #41-2, at ¶5].[4] The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage." [<u>Id.</u>]. Additionally, the homeowners policy contains the following exceptions to coverage:

1.   We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if:
   (a)   Such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
   (b)   Such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

[…]

6.   We do not cover bodily injury or property damage

---

[4] For all policy language cited hereafter, emphasis of defined terms has been altered.

arising out of the ownership, maintenance, use, occupancy,
renting, loading, entrusting, loading or unloading of
watercraft away from an insured premises if the watercraft:
>     (a)   has inboard or inboard-outboard motor power of
>           more than 50 horsepower[…]

>     7.    We do not cover bodily injury or property damage
>     arising out of
>           (a)   the negligent supervision by an insured person
>                 of any person; or
>           (b)   any liability statutorily imposed on any insured
>                 person arising from the ownership, maintenance,
>                 use, occupancy, renting, loaning, entrusting,
>                 loading, or unloading of any aircraft,
>                 watercraft, motor vehicle or trailer which is
>                 not covered under Section II of this policy.

[Pl.'s Loc. R. 56(a)(1) Statement, Doc. #40-1, at ¶46; Def.'s

Loc. R. 56(a)(1) Statement, Doc. #41-2, at ¶5].

The homeowners policy also provides for guest medical

protection and states, in pertinent part that,

> Allstate will pay the reasonable expenses incurred for
> necessary medical, surgical, x-ray and dental services;
> ambulance, hospital, licensed nursing and funeral services;
> and prosthetic devices, eye glasses, hearing aids and
> pharmaceuticals […]
>
> Each person who sustains bodily injury is entitled to this
> protection when that person is:
>     1. On the insured premises with the permission of an
>        insured person; or
>     2. Off insured premises, if the bodily injury:
>        a. Arises out of a condition on the insured premises
>           or immediately adjoining ways;
>        b. Is caused by the activities of an insured person or
>           a residence employee;
>        c. Is caused by an animal owned by or in the care of
>           an insured person; or
>        d. Is sustained by a residence employee.

[Pl.'s Loc. R. 56(a)(1) Statement, Doc. #40-1, at ¶46]. The

coverage for guest medical protection also contains the

exceptions recited above. [Id.].

Defendants' personal umbrella policy states, in pertinent

part, that

Allstate will pay when an insured becomes legally obligated

to pay for personal injury or property damage caused by an occurrence.

***Losses We Cover***

> Coverage applies to an occurrence arising only out of:
> 1. Personal activities of an insured, including the lending by an insured of a land vehicle or watercraft owned by an insured. Activities related to any business or business property are not covered.

[Pl.'s Loc. R. 56(a)(1) Statement, Doc. #40-1, at ¶46; Def.'s Loc. R. 56(a)(1) Statement, Doc. #41-2, at ¶8]. The umbrella policy defines "occurrence" as "an accident or continuous exposure to conditions. An occurrence includes personal injury and property damage caused by an insured while trying to protect persons or property from personal injury or property damage." [Id.]. Like the homeowners policy, the umbrella policy contains similar exceptions to coverage.

## II.  <u>STANDARD OF LAW</u>

At the summary judgment stage, the moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986), and the court must resolve all ambiguities and draw all inferences in favor of the non-movant. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Holcomb v. Iona College</u>, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." <u>Id.</u> In short, the nonmovant "must do more than simply show that there is some

metaphysical doubt as to the material facts." <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "If
the evidence is merely colorable, or is not significantly
probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S.
at 249-50 (citations omitted).

A party may not create a genuine issue of material fact
simply by presenting contradictory or unsupported statements.
<u>See</u> <u>SEC v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir.
1978). Nor may he rest on "allegations or denials" contained in
his pleadings. <u>Goenaga v. March of Dimes Birth Defects Found.</u>,
51 F.3d 14, 18 (2d Cir. 1995). A self-serving affidavit which
reiterates the conclusory allegations of the complaint in
affidavit form is insufficient to preclude summary judgment.
<u>See</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).
"The nonmovant, plaintiff, must do more than present evidence
that is merely colorable, conclusory, or speculative and must
present concrete evidence from which a reasonable juror could
return a verdict in her favor." <u>Page v. Connecticut Dep't of</u>
<u>Public Safety</u>, 185 F. Supp. 2d 149, 152 (D. Conn. 2002)
(citations and internal quotation marks omitted).

## III. <u>DISCUSSION</u>

Allstate seeks a declaration that it has neither a duty to
defend nor a duty to indemnify defendants for claims asserted in
the Genna complaint. Conversely, defendants, although there is
no counterclaim pending, have moved for summary judgment "on the
grounds that there are no genuine issues of material fact

concerning [Allstate's] duty to defend and indemnify" defendants in the underlying litigation. [Doc. #41-1, 1].

### A. **Applicable Law**

"The Connecticut Supreme Court has repeatedly stated that an insurer's 'duty to defend is considerably broader than the duty to indemnify.'" Allstate Ins. Co. v. Jussaume, 35 F. Supp. 3d 231, 235 (D. Conn. 2014) (quoting DaCruz v. State Farm Fire and Cas. Co., 268 Conn. 675, 687 (2004)(collecting cases)). "Consequently, if a court determines that the insurer 'ha[s] no duty to defend [the defendant] in the [underlying] action [this] necessarily means that [the insurer] also ha[s] no duty to indemnify [the defendant] in that action.'" Jussaume, 35 F. Supp. 3d at 235 (quoting DaCruz, 268 Conn. at 688 (alterations in original)). Therefore, the Court turns first to whether Allstate has a duty to defend in the underlying action.

Under Connecticut law[5],

> To defeat an insured's motion for summary judgment on a claim for breach of the duty to defend, by contrast, or to prevail on its own motion for summary judgment on such a claim and/or on a counterclaim for a declaratory judgment that it has no duty to defend in the underlying action, the insurer must establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion. In presenting countervailing proof, the insurer, no less than the insured, is necessarily limited to the provisions of the subject insurance policy and the allegations of the underlying complaint. Therefore, it is only entitled to prevail under a policy exclusion if the allegations of the complaint clearly and unambiguously establish the applicability of the exclusion to each and every claim for

---

[5] The parties do not dispute the applicability of Connecticut law to the present action.

which there might otherwise be coverage under the policy. Lancia v. State Nat'l Ins. Co., 134 Conn. App. 682, 691 (2012). The Connecticut Supreme Court has further held that,

> In construing the duty to defend as expressed in an insurance policy, "[t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability.... It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint.... Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured."

Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 464-65 (2005) (citations omitted; alterations and emphasis in original). "In other words, the question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." Jussaume, 35 F. Supp. 3d at 236 (quoting Cmty. Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co., 254 Conn. 387, 395 (2000) (internal quotations omitted; alteration in original)).

Moreover, "[i]f an allegation falls even possibly within the coverage, then the insurance company must defend the insured." Moore v. Cont'l Cas. Co., 252 Conn. 405, 409 (2000) (citing Schwartz v. Stevenson, 37 Conn. App. 581, 585 (1995)). Conversely, "if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend."

QSP, Inc. v. Aetna Cas. & Sur. Co., 256 Conn. 343, 354 (2001)
(citation omitted).  Accordingly, "whether an insurer is
obligated to defend an insured is determined by the facts in the
underlying complaint, and not the titles assigned to the
particular causes of action." Jussaume, 35 F. Supp. 3d at 236
(citation omitted). Therefore, the "inquiry into an insurer's
duty to defend focuses on the facts alleged, not legal
theories." Id.

**B. Whether the Genna Complaint's Allegations Constitute an Occurrence**

Allstate first argues that the Genna complaint does not
allege facts establishing that Genna's injuries were the result
of an "occurrence," as defined by the policies, and therefore
Allstate has no duty to defend. Defendants assert that, "[t]he
presence of negligence causes of action against both Tandon and
Doohan support that there was an 'occurrence' under the
Homeowners and Umbrella Policies." [Doc. #41-1, 11]. Defendants
further argue that allegations of both negligence and
intentional conduct can qualify as an occurrence, therefore
invoking Allstate's duty to defend and/or indemnify. [Id. at 16-
18].

*a. Definition of "Accident"*

The Court turns first to the definition of the term
"occurrence." Although the policies define an occurrence as, "an
accident," they do not define "accident." However, in
interpreting similar insurance policy provisions, the

14

Connecticut Supreme Court has defined "accident" as "'[a]n underline unintended and unforeseen injurious occurrence;' 'an occurrence for which no one is responsible'; and 'an event of unfortunate character that takes place without one's foresight or expectation.'" Allstate Ins. Co. v. Barron, 269 Conn. 394, 408 n. 10 (2004) (internal citations omitted; emphasis in original). Connecticut District Courts have come to similar conclusions when evaluating insurance policies that define "occurrence" as "an accident." For example, Judge Hall "interpreted the term to encompass 'unintended, unexpected, or unplanned event[s]." Kemper Independence Ins. Co. v. Tarzia, Civ. No. 3:11-cv-394 (JCH), 2012 WL 2327703, at *2 (D. Conn. June 19, 2012) (quoting Middlesex Ins. Co. v. Mara, 699 F. Supp. 2d 439, 449 (D. Conn. 2010)); see also Truck Ins. Exchange v. Spada, et al., Civil No. 3:06CV1060(AVC), 2007 WL 2071629, at *3 (D. Conn. July 16, 2007) (citing Commercial Contractors Corp. v. American, 152 Conn. 31, 42 (1964)) ("It is well settled that coverage does not extend to an insured's intentional torts where, as here, under the terms of the policy, coverage is triggered by an "occurrence," and an "occurrence" is defined as an "accident."). "Therefore, 'occurrence' as defined in the [p]olicy does not include intentional torts or other intended actions, and the intent required is the intent to commit the specific act leading to the injury, not the intent to achieve a specific result." State Farm Fire & Cas. Co. v. Mesniaeff, Civ. No. 3:12-cv-1675 (VLB), 2014 WL 1154402, at *6 (D. Conn. Mar. 21, 2014); see also Allstate

Ins. Co. v. Smudin, Civ. No. 3:07-cv-1679 (AWT), 2009 WL 890912, at *5 (D. Conn. Mar. 31, 2009) ("[T]he relevant inquiry here at the stage of determining whether there was an 'occurrence' is whether the event causing the injury was an accident, not whether the injury itself is accidental."). With this in mind, the Court turns to each count of the Genna complaint.

### b. *Counts Twenty Eight (Civil Assault and Battery) and Thirty Five (Civil Conspiracy)*

There is no genuine issue of material fact that claims based on the allegations of counts twenty eight (civil assault and battery) and thirty five (civil conspiracy) do not fall within the scope of the policies' coverage. An "occurrence" does not include intentional torts or other intentional actions. Count twenty eight alleges that Genna's injuries were caused by defendant Doohan's "intentional assault and battery" of plaintiff, references the "direct and natural consequences of [Doohan's] intentional acts[...]," and alleges that defendant Doohan's "actions in confronting [Genna] [...] were intentional and highly unreasonable." [Genna complaint, Doc. #40-5, 78-80 (emphasis added)]. Similarly, count thirty five alleges a civil conspiracy to commit assault and battery and to mislead the Bridgeport Police in their investigation of the incident. [Id. at 96-98]. Accordingly, the Court finds there is no duty to defend Doohan with respect to counts twenty eight and thirty five of the Genna complaint.

### c. *Counts Eight and Nine (Negligence) and Eighteen and Nineteen (Recklessness)*[6]

Turning to the negligence counts of the Genna complaint, Defendants first argue that because counts eight and nine allege negligence causes of action, these "allegations by their very nature suggest accidental or unintentional conduct and a breach of a corresponding standard of care that produces damages." [Doc. #41-1, 13]. Allstate argues that, "Simply re-labeling intentional conduct as negligence, when it is all based upon a core set of facts that clearly implicates intentional acts is insufficient to trigger insurance coverage." [Doc. #40-2, 20]. For the reasons that follow, the Court rejects defendants' argument.

Connecticut law dictates that, "[t]he insurer's duty to defend depends on whether the [underlying plaintiff] ha[s] in [his] complaint, 'stated facts which bring the injury within the coverage [of the policy].'" Jussaume, 35 F. Supp. 3d at 236-37 (quoting Allstate Ins. Co v. Korytkowski, No. CV044001464S, 2006 WL 1461121, at *4 (Conn. Super. Ct. May 9, 2006)); see also Mara, 699 F. Supp. 2d at 448 ("Under the governing law of Connecticut, the Connecticut Supreme Court has indicated that an insurer's duty to defend is determined by the allegations in the underlying complaint." (citation omitted)). "Connecticut courts look past the terminology in a pleading to grant summary

---

[6] Although the Court only explicitly addresses the negligence counts, this section of the ruling is applicable to counts 18 and 19 of the Genna complaint to the extent that "reckless conduct is an aggravated form of negligence." Lewis v. Van Horn, CV075013724S, 2008 WL 249098, at *2 (Conn. Super. Ct. Jan. 2, 2008)(citation omitted).

judgment for the insurer, holding there is no duty to defend a negligence action which is actually based on intentional acts by the insured." Mara, 699 F. Supp. 2d at 456; see also Town of Redding v. Elfire, LLC, 98 Conn. App. 808, 818 (2006) ("Construction of a pleading is a question of law for the court to determine and requires de novo review […] When a case requires the court to determine the nature of a pleading, courts are not required to accept the label affixed by the moving party."). In rejecting a similar argument made by defendants Tandon and Doohan in a separate insurance coverage case arising from the exact same underlying allegations as those at issue here, Superior Court Judge Cole-Chu noted that, "The court must evaluate the nature of the claim and whether it constitutes an 'occurrence' based solely on the facts alleged. Therefore, the court is not bound by the causes of action or legal conclusions set forth in the underlying complaints." New London County Mut. Ins. Co. v. Robert Tandon and Sapna Tandon, KNL-CV-13-6017658-S, slip. op. at 9 (Conn. Super. Ct. Sept. 25, 2014); see also Jussaume, 35 F. Supp. 3d at 236 (citation omitted) ("whether an insurer is obligated to defend an insured is determined by the facts in the underlying complaint, and not the titles assigned to the particular causes of action."). The Court agrees with Judge Cole-Chu and the above-cited supporting case law, and therefore rejects defendants' argument that because counts eight and nine are labeled "negligence," and allege defendants' "legal duty to exercise reasonable care," then Allstate has a duty to

defend. Moreover, as will be discussed further below, the facts alleged in the Genna complaint unambiguously implicate defendants' intentional acts.

Next, defendants argue that facts alleged in the Genna complaint could be interpreted as either intentional or negligent acts, and therefore the court must rely upon the interpretation favoring coverage. [Doc. #41-1, 15-16]. The Court disagrees in light of the Genna complaint's unambiguous allegations. First, the Court notes that the same factual allegations, recited verbatim in section I above, are reincorporated into each count against both defendants. "Merely describing an action in terms of 'negligence' is of no consequence when the action itself 'can only be deemed intentional.' In other words, '[a] plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark.'" <u>Mara</u>, 699 F. Supp. 2d at 457 (quoting <u>Middlesex Mut. Assur. Co. v. Rand</u>, 1996 WL 218698, at *2 (Conn. Sup. Ct. 1996)).

Even reading the Genna complaint in the light most favorable to defendants, the complaint fails to allege facts that Genna's injuries were the result of an accident. As Judge Cole-Chu aptly concluded, in light of similar arguments presented by defendants in the Superior Court matter,

> Not counting the unfortunate fall off a dock of a member of the Doohan-Tandon party, which is not alleged to have caused injury or loss to Genna or Donna Genna, the facts alleged in the underlying complaint, show no accident in the alleged chain of events causing Genna's claimed injuries and Donna Genna's claimed losses. To determine if

19

an event was intentional or accidental for purposes of
homeowners insurance policies, the court looks to the
motive of the acting party. See Capstone Building Corp. v.
American Motorist Ins. Co., 308 Conn. 760, 775, 67 A.3d 961
(2013). As was the case for the assault in Bullock, "reason
mandates that from the very nature of the act[s]" by Doohan
and Tandon of pursuing and directing others to assault
Genna, "harm to [him] must have been intended." Unlike the
insured in Pasiak, whose motivation for assisting the
robber was murky, Doohan and Tandon's alleged actions –
progressing from yelling at Genna, to pursuing him in the
"Up & Over," to throwing bottles at him, to directing his
assault – manifest a clear motive and intent to do harm
that was not abandoned despite ample opportunity. Even if
it is assumed that the person or persons who pushed Genna
into the water did not intend to cause his near drowning or
extensive injuries, intent is not determined by the outcome
of an act, but the act itself.

[…]

Despite the labels in the [] Genna Complaint[], the court
cannot interpret the alleged attack, injuries sustained by
Genna, and Losses claimed by Donna Genna as the product of
an "unforeseen" or "unplanned" event. Rather, they were the
direct result of Doohan's and Tandon's intentional actions
as they were alleged in the complaint[].

New London County Mut. Ins. Co., KNL-CV-13-6017658-S, slip. op.
at 11-12 (alterations added). After a careful review of the
insurance policies at issue and the allegations of the Genna
complaint, the Court agrees with Judge Cole-Chu's sound
conclusion that the complaint's allegations, "do not allege
facts of an ambiguous nature and cannot plausibly be interpreted
to have alleged anything other than the intentional acts of
Doohan and Tandon, which caused the injuries to Genna." Id. at
10. Accordingly, the Court finds that the Genna complaint does
not allege facts sufficient to establish that Genna's injuries
arose from an "occurrence" as defined by the policies.

In support of finding coverage Defendants further submit
that, "It is clear, however, that Tandon and Doohan did not

engage in any direct or intentional contact with Genna." [Doc. #41-1, 17]. Defendants rely on the affidavit of Sapna Tandon, which states in pertinent part that,

> 7. I was a passenger on the boat and was unaware that an altercation was occurring at the time that it happened. While I understand that an altercation took place between several individuals, including Frank Genna, at no time did I interact with Mr. Genna, direct others to interact with Mr. Genna or physically make contact with Mr. Genna.
>
> 8. At no time did my husband leave the boat and interact with or engage in a physical altercation with Mr. Genna.

[Doc. #41-11, Ex. 9, Tandon Aff. at ¶¶7-8]. Defendants further argue that this affidavit is not self-serving and is corroborated by the Bridgeport Police Report disclosed by Allstate in discovery. [Doc. #43, 5].

As noted by defendants, the Connecticut Supreme Court has stated that, "[a]n insurer may be obligated to provide a defense not only based on the face of the complaint, but also <u>if any facts known to the insurer</u> suggest that the claims fall within the scope of coverage[…]" <u>Hartford Casualty Ins. Co. v. Litchfield Mut. Fire Ins. Co.</u>, 274 Conn. 457, 466-67 (2005) (emphasis added). Accordingly, the Connecticut Supreme Court has adopted "the sounder approach," which "is to require the insurer to provide a defense when it <u>has actual knowledge of facts</u> establishing a reasonable probability of coverage." <u>Id.</u> (citation omitted; emphasis added). Despite defendants' argument to the contrary, the police report does not provide facts that would suggest the claims in the Genna complaint fall within the scope of the policies' coverage. Indeed, the police report in

21

large part fails to offer much, if any, insight as to what happened onboard the "Up & Over." Although defendants are correct that the police report does not implicate them in the actual assault of Mr. Genna, the police report does not exculpate them from the allegations in the Genna complaint. For example, the police report notes that there was an initial verbal altercation "between all parties" and that "words were exchanged between [the victims] and the parties on board the 'Up & Over.'"[Doc. #41-8, Ex. 6, 3]. The police report also notes that defendant Doohan was driving the "Up & Over," which "turned around and docked several boat slips West of [Mr. Genna's] vessel." [Id.]. In fact, the police report largely confirms that the incident at issue occurred in a similar manner as that alleged in the Genna complaint. Simply, the police report does not provide Allstate with <u>facts</u> establishing a reasonable probability of coverage.

To the extent that Ms. Tandon's largely self-serving affidavit denies the allegations in the Genna complaint, the law is clear that, "[t]he obligation of the insurer does not depend on whether the injured party will successfully maintain a cause of action against the insured, but on whether he has, in his complaint, stated facts which bring the injury within coverage." <u>Bd. of Ed. V. St. Paul Fire & Marine Ins. Co.</u>, 261 Conn. 37, 40-41 (2002). Moreover, as noted above, where a moving party has carried its burden of proving no issue of material fact, the party opposing summary judgment "may not rely merely on

allegations or denials." Fed. R. Civ. P. 56(e)(2). Indeed, the opposing "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586.  In that regard, a party may not create a genuine issue of material fact simply by presenting contradictory or unsupported statements. See Research Automation Corp., 585 F.2d at 33. Here, Ms. Tandon's affidavit consists of unsupported statements, which simply shows "some metaphysical doubt as to the material facts." Contrary to defendants' assertions, the police report does not corroborate Ms. Tandon's self-serving denials of personal involvement. Therefore, the Court finds no genuine issue of material fact which would prevent the Court from granting summary judgment in Allstate's favor.

Accordingly, as stated above, because the Genna complaint does not state facts which bring Mr. Genna's injury within the policies' coverage, Allstate has no duty to defend defendants in the underlying action.

### d. *Counts Thirty Six, Thirty Seven, Forty Six and Forty Seven (Loss of Consortium)*

The remaining counts of the Genna complaint (36, 37, 46, 47) assert Donna Genna's loss of consortium claims against defendants in light of their alleged negligent or reckless conduct. Although the Connecticut Supreme Court has held that a liability policy may cover loss of consortium claims arising from the bodily injury to a spouse, Connecticut Ins. Guar. Ass'n v. Fontaine, 278 Conn. 779 (2006), loss of consortium claims are

derivative of the injured spouse's cause of action. <u>Izzo v.</u>
<u>Colonial Penn. Ins. Co.</u>, 203 Conn. 305, 312 (1987); <u>see also</u> <u>id.</u>
("A cause of action for loss of consortium does not arise out of
a bodily injury to the spouse suffering the loss of consortium;
it arises out of the bodily injury to the spouse who can no
longer perform the spousal functions."). Accordingly, because
the policies do not provide coverage for Genna's bodily
injuries, it therefore follows that there is also no coverage
for Donna Genna's loss of consortium claims.

## C. **Applicability of Exclusions**

Because the Court finds that the Genna complaint fails to
allege facts which would constitute an "occurrence" under the
policies, it need not reach Allstate's remaining arguments
concerning the applicability of the intentional acts and
watercraft exclusions.[7]

---

[7] Nevertheless, the Court notes, and further agrees with, Judge Cole-Chu's
holding in the <u>New London County Mut. Ins. Co.</u> matter that a watercraft
exception, which is nearly identical to that at issue here, applied to
exclude coverage in light of the facts alleged in the Genna complaint:

> The facts of all counts against Doohan and Tandon in the
> apportionment complaint and the Genna Complaint, as a matter of
> law, that claims in both those pleadings arise out of the use of
> an excluded watercraft, as defined in the policy. Doohan's and
> Tandon's good faith dispute as to the meaning of "arise out of
> the use of" does not, without more, mean that the language is
> ambiguous. Based on <u>Hogle</u>, <u>Board of Education</u>, and <u>Nantes</u>, it is
> clear that an accident "arising out of the use of" an automobile
> is broadly construed to mean an accident that "'was connected
> with,' 'had its origins in,' grew out of,' flowed from,' or 'was
> incident to'" the use of an automobile. No ambiguity appearing,
> this court can think of no reason why such meaning should not be
> applied to the facts of the present case, specifically in the
> context of insurance policy watercraft exclusions.
>
> In light of this broad construction, the principal, operative
> events allegedly causing Genna's injuries and Donna Genna's
> losses arise inescapably from the use of the "Up and Over." Under
> the <u>Hogle</u> interpretation, it is not necessary, as Doohan and
> Tandon suggest, that the attack occurred on, or had been caused

D. **Indemnification**

Allstate also seeks a declaratory judgment that it has no duty to indemnify defendants for any judgment arising from the claims in the underlying action. "Connecticut law holds that the duty to defend is much broader than the duty to indemnify. It thus follows that where no to defend exists, there is no duty to indemnify." Mara, 699 F. Supp. 2d at 460 (citations omitted). Therefore, because Allstate has no duty to defend in the underlying action, it thus follows that Allstate also has no duty to indemnify defendants from any damages arising from that action.

IV. **CONCLUSION**

For the reasons stated, Allstate's motion for summary judgment [Doc. #40] is GRANTED. Accordingly, defendants' motion for summary judgment [Doc. #41] is DENIED.

The Clerk will enter judgment in favor of plaintiff Allstate Insurance Company and close this case.

---

by, the "Up and Over" for the exclusion to apply. By the use of the "Up and Over," and only by that use, Doohan, Tandon and the others in their party are alleged to have "directed" the assault on, and beating of, Genna. Doohan, Tandon and their passengers arrived at the marina by means of the "Up and Over." The alleged altercation between Genna and Doohan, Tandon , and their passengers became possible – "flowed from" – the transportation of Doohan, Tandon, and their passengers from Captain's Cove to the "south dock" in the "Up and Over." […] The "Up and Over" was the actual location of part of the altercation: Doohan and Tandon yelled at, threw a bottle towards, and directed the assault on Genna all while aboard the "Up and Over." For all of these reasons, as a matter of law, the claims in both complaints in the underlying case arise out of the use of an excluded watercraft, as defined in the policy."

New London County Mut. Ins. Co., KNL-CV-13-6017658-S, slip. op. at 7-8. Accordingly, although not explicitly argued by defendants, to the extent they seek coverage under the homeowners policy's guest medical protection, such coverage would be excluded by the watercraft exception.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. #23] on October 18, 2013.

ENTERED at Bridgeport this 25th day of March 2015.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE